**Garnett H. MENEFEE and Martha T. Menefee, Appellants,**

v.

**The BOARD OF ADJUSTMENT OF the CITY OF TAYLOR MILL et al., Appellees.**

Court of Appeals of Kentucky.

May 4, 1973.

William O. Bertelsman, Bertelsman & Bertelsman, Newport, for appellants.

Gus Sheehan, Covington, for appellees Frederick Joseph Rauen and Linda Sue Rauen.

Frank A. Wichmann, Covington, for appellees Board of Adjustment of the City of Taylor Mill, the City of Taylor Mill, Donald Tobler.

STEINFELD, Justice.

Appellees Joseph Rauen, Jr. and Linda Sue Rauen, his wife, were the owners of a residential building lot located at the corner of Taylor Mill Road and St. Matthews Circle in the City of Taylor Mill, Kentucky. They petitioned the appellee, The Board of Adjustment of the City of Taylor Mill, to grant a variance of the zoning ordinance to permit them to erect a house on that lot so that the house would face St. Matthews Circle instead of Taylor Mill Road as the zoning ordinance required. The variance was granted over the protest of appellants Garnett H. Menefee and his wife who own and occupy a residence on the land which is contiguous to the Rauen property and which faces St. Matthews Circle. Upon the granting of the variance, the Menefees promptly filed a "Complaint on Appeal" in the Kenton Circuit Court, which affirmed the action of the Board of Adjustment. From that judgment this appeal was lodged. We affirm.

The lot in this litigation is rectangular in shape and extends along St. Matthews Circle 165 feet and along Taylor Mill Road 75 feet. It is generally level except for a sinkhole, which we will hereinafter discuss. Under the zoning ordinance the narrow dimension of a corner lot is considered the front thereof and a house must face the front of the lot. That ordinance requires a rear yard of not less than 50 feet and a side yard of not less than 5 feet. The variance permitted the construction of a residence fronting St. Matthews Circle, with a rear yard of 14 feet and a side yard of 7 feet from the Menefee boundary.

A hearing was conducted by the Board of Adjustment, at which the city building

inspector testified that if the variance was not granted, a house, if erected, would be on top of the sinkhole. Another witness stated that there are a number of sinkholes in the neighborhood which "seem to have no bottom." The owners stated that tons of dirt had been placed in the sinkhole during the last six years and that the lot is still settling. A developer of most of the land in the city stated "(a)lso a large sink hole was located on the lot closer to Taylor Mill and was filled up over a number of years." A neighbor recalled " * * that a large sink hole was in the front portion of the lot facing Taylor Mill Road. This sink hole was large enough to lose a truck in it." The developer of the subdivision had brought in a load of dirt and packed it down. Other witnesses discussed the benefits to the neighborhood of granting the variance, such as aesthetic considerations, avoiding blockage of view, safety of the use of the roads and drainage improvement.

The Menefees continue to argue that granting the variance was arbitrary, that there was no substantial evidence and that the owners would be deprived of the reasonable use of the land equivalent to the standards imposed by the zoning statutes. The two statutes which are called to our attention are KRS 100.241 and KRS 100.243, which read as follows:

"100.241. Dimensional variance.—The board shall have the power to hear and decide on applications for dimensional variances where by reason of the exceptional narrowness, shallowness, or unusual shape of a site on the effective date of the zoning regulation or by reason of exceptional topographic conditions, or some other extraordinary situation or condition of that site, the literal enforcement of the dimensional requirements (height or width of building or size of yards but no population density) of the zoning regulation would deprive the applicant of reasonable capacity to make use of the land in a manner equivalent to the use permitted other landowners in the same zone. The board may impose any reasonable conditions or restrictions on any variance it decides to grant."

"100.243. Findings necessary for granting variances.—Before any variance is granted, the board must find all of the following, which shall be recorded along with any imposed conditions or restrictions in its minutes and records and issued in written form to the applicant to constitute proof of the dimensional variance.

(1) The specific conditions in detail which are unique to the applicant's land and do not exist on other land in the same zone.

(2) The manner in which the strict application of the provisions of the regulation would deprive the applicant of a reasonable use of the land in the manner equivalent to the use permitted other landowners in the same zone.

(3) That the unique conditions and circumstances are not the result of actions of the applicant taken subsequent to the adoption of the zoning regulation.

(4) Reasons that the variance will preserve, not harm the public safety and welfare, and will not alter the essential character of the neighborhood."

Appellants argue that the proof was inadequate to authorize the Board to find *all* of the elements required under KRS 100.-243, particularly subparagraph (2). They say that these statutes " * * * severely restrict the powers of the Board of Adjustment in granting variances"; that in the absence of such complete finding, the action of the Board would be arbitrary. They cite American Beauty Homes Corporation v. Louisville and Jefferson County Planning and Zoning Commission, Ky., 379 S.W.2d 450 (1964). Appellants also argue that the location of the sinkhole was not sufficient to authorize the Board to decide that a house could not be located in such a way as to avoid it. As we pointed out,

the building inspector testified "(i)f the proposed house would face Taylor Mill Road, its position would be directly on top of a sink hole." Others explained that it was located in the front or near the Taylor Mill Road part of the lot. We believe the explanation of its location was sufficient to support the Board's action. It is therefore our opinion that the evidence established an " * * * extraordinary situation or condition of that site * * *" which authorized the variance.

The judgment is affirmed.

PALMORE, C. J., and MILLIKEN, OSBORN, REED, STEINFELD and STEPHENSON, JJ., sitting.

All concur.